UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN R. BASE,<br><br>   Plaintiff,<br><br> v.<br><br>FCA US LLC,<br><br>   Defendant. | Case No. 17-cv-01532-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**<br><br>Re: Dkt. No. 99 |

## I. INTRODUCTION

Plaintiff Galen Base filed this action in Sonoma County Superior Court, asserting claims against Defendant FCA U.S. LLC ("FCA") under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code section 1790, *et seq*. FCA removed the action to this Court on the basis of diversity jurisdiction and the parties eventually entered into a settlement agreement. Plaintiff now brings a Motion for Attorneys' Fees, Costs and Expenses ("Motion") as the prevailing party under California Civil Code section 1794(d). A hearing on the Motion was conducted on Friday, August 30, 2019 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

Plaintiff purchased a 2012 Dodge Ram 2500 on December 16, 2012. Complaint ¶ 9. According to Plaintiff's attorney, Steve Mikhov, the vehicle began exhibiting "serious transmission, engine, and electrical issues" within the applicable express warranty period. Mikhov Decl. ¶ 4. Although Plaintiff took the vehicle to an FCA repair facility many times, FCA was

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

never able to fix the problem. *Id.* ¶ 5.

On October 21, 2016, Plaintiff filed this action, retaining Knight Law Group ("Knight Law") to represent him on a contingent basis. *Id.* ¶¶ 8-9. On November 16, 2016, FCA offered to repurchase the vehicle for $82,500. Tudzin Decl. ¶ 5 & Ex. A. Plaintiff rejected that offer. Mikhov Decl. ¶ 10. The parties then engaged in discovery. *Id.* ¶ 11. They attended a mediation on February 19, 2017, but it was unsuccessful. *Id.* ¶ 12.

On January 29, 2018, the law firm of Hackler Daghighian Marino & Novack P.C. ("HDMN") associated in to the case to assist Knight Law with trial preparation; attorney Sepehr Daghighian was to act as lead trial counsel in the case. *Id.* ¶ 15.

On October 23, 2018, FCA made Plaintiff a "reasonable settlement offer that accounted for FCA's egregious actions under the Song-Beverly Act." Mikhov Decl. ¶ 16 & Ex. E ("Rule 68 Offer"). Under the Rule 68 Offer, FCA offered to pay Plaintiff $133,000 plus reasonable attorneys' fees and costs. *Id.* Plaintiff rejected the offer, but at a settlement conference on April 5, 2019 agreed to settle the case for $135,000 plus attorneys' fees and costs. *Id.* ¶ 16. According to Mikhov, this amount amounted to a "full statutory 'buy-back' of Plaintiff's defective vehicle, incidental and consequential damages, and a civil penalty." *Id.*

In the Motion, Plaintiff asks the Court to award attorneys' fees in the amount of $124,215.00, that is, a lodestar amount of $82,810.00 plus a .5 multiplier enhancement of $41,405.00. Plaintiff also seeks an award of costs in the amount of $14,797.93. The lodestar amount consists of fees incurred by Knight Law in the amount of $44,392.50 and fees incurred by HDMN in the amount of $38,417.50. Mikhov Decl. ¶ 2 & Ex. A (Knight Law time sheets); Daghighian Decl. ¶ 8 & Ex. A (HDMN time sheets). Plaintiff's costs are set forth in his Bill of Costs. Mikhov Decl., Ex. B.

FCA challenges the amounts Plaintiff requests in the Motion. FCA contends the rates requested are unreasonable, the time billed is excessive, and that no multiplier should be awarded. FCA asks the Court to reduce the hourly rates requested by Plaintiff, reduce fees for "duplicative billing, travel, unnecessary 'review,' purely clerical tasks, and unsupported or anticipated time," and reduce HDMN's fees by 20% based on its use of 15-minute increments, which FCA argues

has resulted in excessive fees.

## III. ANALYSIS

### A. Legal Standards

In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Under California law, buyers who prevail in an action under the Song-Beverly Act are entitled to "the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code section 1794(d). A party is a prevailing party if the court, guided by equitable principles, decides that the party has achieved its "main litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 150–51 (2006); *see also Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1262 (2012) (holding that "consumers who successfully achieve the goals of their litigation through a compromise agreement" may recover attorneys' fees and costs as prevailing parties under the Song-Beverly Act).

California courts have found that in awarding fees under the Song-Beverly Act, the trial court must "make an initial determination of the actual time expended; and then [must] ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994). In evaluating the reasonableness of counsel's charges, the court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id*. The prevailing party has the burden of showing that the attorneys' fees it requests are reasonable. *Id*.

California courts have further held that the Song-Beverly Act permits the trial court to award a multiplier where it deems appropriate under the lodestar adjustment method. *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 819 (2006) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)). In *Ketchum*, the California Supreme Court explained:

> [T]he lodestar is the basic fee for comparable legal services in the

3

community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. . . . The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

24 Cal. 4th at 1132 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). A court may also, "for an appropriate reason," make a downward adjustment under the lodestar adjustment method, for example where the court finds that time billed was excessive or that the tasks performed were in connection with unrelated claims upon which the party did not prevail. *Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 161 (2006). It is improper, however, to limit a fee award under the Song-Beverly Act to a percentage of the prevailing party's recovery. *Id*. at 164. The "[l]odestar analysis is generally the same under California law and Federal law." *Rodriguez v. Cnty. of Los Angeles*, 2014 WL 8390755, *2 (C.D. Cal. Dec. 29, 2014).

**B. Lodestar Amount**

Plaintiff has provided time sheets reflecting the time his counsel spent on this litigation, broken down by specific task. Mikhov Decl. ¶ 2 & Ex. A; Daghighian Decl. ¶ 8 & Ex. A. The timesheets reflect the following time billed and requested rates for the attorneys who worked on the case:

Knight Law

- Alastair Hamblin: 2.2 hours at $325/hour
- Amy Morse: 11.5 hours at $350/hour
- Christopher Swanson: 12.2 hours at $375/hour
- Deepak Devabose: 14.6 hours at $275/hour
- Diane Hernandez: 25.8 hours and $375/hour
- Kristina Stephenson-Cheang: 11.1 hours at $375/hour
- Maite Colon: 6.2 hours at $275/hour
- Mitch Rosensweig: 20.4 hours at $325/hour

4

- Russell Higgins: 4.6 hours at $450/hour
- Steve Mikhov: 12.4 hours at $550/hour

HDMN

- Sepehr Daghighian: 5 hours at $490/hour
- Larry S. Castruita: 62.125 hours at $350/hour; 23 hours at $385/hour
- Erik K. Schmidt: 18.25 hours at $275/hour
- Lauren C. Martin: .25 hours at $250/hour; .75 hours at $275/hour
- Andrea Plata (paralegal): 2 hours at $75/hour

The Court has reviewed the time sheets supplied by Plaintiff and finds the time billed to be reasonable, with the exception of 12.5 hours of "anticipated" time billed for Castruita's work on the instant motion. *See* Daghighian Decl., Ex. A (HDMN timesheets). Although FCA challenged these time entries in its Opposition brief on the basis that the work was not adequately documented, Plaintiff did not supply a declaration with his Reply brief documenting the time Castruita spent on the briefing of the Motion and Reply. Therefore, the Court does not award fees for that time.

On the other hand, the Court declines to reduce the time billed by Plaintiff's counsel for travel on the basis that Plaintiff could have retained local counsel. FCA has not demonstrated that Plaintiff could have retained local counsel with similar qualifications and experience in lemon law and the Court declines to speculate on that question. The Court also declines to reduce the time billed on the basis that two law firms and multiple attorneys worked on this case; a review of the billing records reflects that the vast majority of the work on this case was performed by the associate attorneys whose billing rates were lower than the rates charged by the more experienced attorneys who worked on the case. The time sheets also do not reflect any significant amount of time billed for meetings and conferences between Plaintiff's attorneys, which is one of the potential inefficiencies of using a large number of attorneys to staff a case. The Court concludes based on its review of the time sheets that the staffing choices of Plaintiff's counsel did not result in excessive attorneys' fees.

Nor do the 15-minute billing increments used by HDMN appear to have resulted in

5

excessive fees. In *Hall v. FCA*, the court reduced HDMN's fees on the basis of this billing practice where it found that the time sheets included numerous entries for tasks that should have taken less than 15 minutes but were billed for .25 hours. No. 16-cv-0684 JLT, Docket No. 73 at p. 8 (E.D. Cal. May 21, 2018). In contrast, HDMN's time sheets for work on this case do not include entries for small tasks that would be expected to consume less than 15 minutes, which is consistent with the statement by Sepehr Daghighian in his Reply declaration that the firm did not bill for smaller tasks (i.e., tasks that take less than fifteen minutes). Daghighian Reply Decl. ¶¶ 4-5. Therefore, without deciding whether HDMN's practice of billing in 15-minute increments is advisable, the Court concludes that it did not result in excessive time in this case and therefore does not warrant a reduction in Plaintiff's lodestar.

Next, the Court addresses the reasonableness of the rates requested by Plaintiff's counsel. The fee applicant has the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety Bd.,* 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1024–25 (N.D. Cal. 2012). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in part, on the rate awarded to same attorney in another case, was reasonable). Finally, the Court may draw on its own experience in determining what constitutes a reasonable rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

As to some of the attorneys who worked on this case the Court already determined their reasonable hourly rates in the *Bratton* case, No. 17-cv-1458 JCS, Docket No. 92, in which the time

billed was performed in approximately the same time period as this case. The Court will apply those rates here. In particular, the Court finds that the following rates are reasonable: 1) Amy Morse - $350/hour; 2) Deepak Devabose - $250/hour; 3) Alastair Hamblin - $325.00/hour; 4) Steve Mikhov - $500/hour; 5) Russell Higgins - $400/hour. The Court addresses the reasonableness of the rates sought for each of Plaintiff's remaining attorneys below.

Knight Law

Christopher Swanson: According to Mikhov's declaration, Christopher Swanson graduated from UCLA School of Law in 2011 and has been an Associate at Knight Law since 2014. Mikhov Decl. ¶ 24. Prior to working at Knight Law, Swanson had experience in individual and class action consumer protection law. *Id*. Plaintiffs request fees for Swanson at a billing rate of $375/hour. The Court finds this rate to be somewhat high based on its own experience and therefore reduces the rate to $350/hour.

Diane Hernandez: Diane Hernandez is of counsel and frequently works with Knight Law on lemon law cases. Mikhov Decl. ¶ 28. She was admitted to practice in California in 1997. *Id*. Hernandez appeared at the vehicle inspection in February 2019. *Id*. Hernandez's hourly rate in this case was $375/hour. *Id.* The Court finds this rate to be reasonable based on its own experience.

Kristina Stephenson-Cheang: Kristina Stephenson-Cheang graduated from Western State University College of Law and was admitted to practice in 2008. Mikhov Decl. ¶ 26. Stephenson-Cheang has been employed with Knight Law since 2013. Prior to her employment at Knight Law, she worked for a different lemon law firm. Stephenson-Cheang's hourly rate in this case is $375/hour. The Court finds this rate to be somewhat high. *See* Mikhov Decl., Ex. J (Sonoma Superior Court proposed order requesting $350/hour for Stephenson-Cheang); Tudzin Decl., Ex. D (Sacramento Superior Court order awarding $350/hour for Stephenson-Cheang), *id*., Ex. E (Hayward Superior Court order awarding $350/hour for Stephenson-Cheang). The Court finds that a rate of $350/hour is reasonable.

Maite Colon: According to Mikhov, Maite Colon graduated from University of Puerto Rico Law School in 2011 and was admitted to practice in Florida in 2011. Mikhov Decl. ¶ 30.

7

She was admitted to practice law in California in 2018 and has worked at Knight Law since 2017. Her hourly billing rate is $275/hour. The Court finds this rate to be reasonable based on its own experience.

Mitchell Rosensweig: Mitchell Rosensweig was an associate at Knight Law when he worked on this case. Mikhov Decl. ¶ 29. He graduated cum laude from the University of Baltimore School of Law and was admitted to practice law in the state of Maryland in 2012. *Id*. He was also admitted to practice law in Washington, D.C. in 2014. *Id*. Prior to his employment with Knight Law, Rosensweig practiced primarily in the area of medical malpractice. *Id*. He was admitted to the California Bar in 2018. His hourly rate in this matter was $325/hour. Based on its own experience, the Court finds this rate to be reasonable.

HDMN

Sepehr Daghighian: Daghighian states in his declaration that his current rate is $550/hour and that before January 1, 2019 his rate was $490/hour. Daghighian Declaration ¶ 3. The time sheet attached to his declaration reflects three time entries by Daghighian that are included in the requested lodestar amount, for 5 hours billed at the end of January 2018 at a rate of $490/hour. Daghighian Decl., Ex. A. Therefore, the Court considers only whether that rate is reasonable based on Daghighian's education and experience. Daghighian states that he was admitted to practice law in 2005 and that he is a managing partner at his firm. Daghighian Decl. ¶ 2. He says that he has handled dozens of lemon law cases. *Id*. The Court finds the rate billed by Daghighian in this case of $490/hour to be reasonable.

Larry S. Castruita: According to Daghighian, Larry Castruita is an associate attorney with HDMN. Daghighian Decl. ¶ 4. Castruita graduated from Southwestern Law School and was admitted to practice in California in 2011. Plaintiffs seek to recover fees for Castruita at the following rates: $350/hour as of January 1, 2018; and $385/hour after January 1, 2019. Daghighian Decl. ¶ 4. Based on its own experience, the Court finds the rate sought for work performed through December 31, 2018 of $350/hour to be reasonable. The Court finds that a rate of $350/hour is reasonable for the work performed in 2019, rather than the requested rate of $385/hour.

Erik K. Schmidt: According to Daghighian, Erik Schmitt is an associate attorney with HDMN and was admitted to practice in California in 2017. Daghighian Decl. ¶ 5. Schmidt graduated magna cum laude from Southwestern Law School and served as a judicial intern for Honorable Stephen A. Marcus of the Los Angeles Superior Court and the Honorable Phillip S. Gutierrez of the United States District Court for the Central District of California. *Id*. His hourly rate in this case is $275/hour as of January 1, 2019. Based on its experience, the Court finds this rate to be reasonable.

Lauren C. Martin: Daghighian states in his declaration that Lauren Martin's hourly rate was $250/hour through December 31, 2017 and $275/hour after January 1, 2018. Daghighian Decl. ¶ 6. He does not state when she graduated from law school, when or where she was admitted to practice law or what other experience she has. Plaintiff has not established that Martin's rates are reasonable and the Court is unable to determine a reasonable rate based on the current record. Therefore, the Court does not award fees for Martin's work.

Andrea Plata (paralegal): Andrea Plata is a paralegal who has been employed by HDMN for over two years. Daghighian Decl. ¶ 7. Her hourly rate is $75/hour. Based on its experience, the Court finds that rate to be reasonable.

Based on these adjusted rates and hours, the Court finds that Plaintiff's lodestar amount is $67,582.50.

C. **Whether a Multiplier is Warranted**

Plaintiff asks the Court to adjust the lodestar amount by applying a positive multiplier of .5. FCA argues that a positive multiplier is not justified here. The Court agrees with FCA.

While counsel obtained a good result for Plaintiff, this case did not involve any issues that were particularly novel or complex. Further, although Plaintiff points to the risk associated with counsel representing him on a fully contingent basis, as well as the delay in obtaining compensation because of the contingent representation arrangement, the risk that Plaintiff would not recover attorneys' fees was relatively low in this case. Attorneys' fees are guaranteed to prevailing parties under the Song-Beverly Act and Plaintiff had a strong enough case (based on his counsel's description of the facts) that it was unlikely that he would receive nothing in damages.

As to the delay in receiving compensation, the Court concludes that the rates that it has awarded are sufficient to compensate counsel for the cost of any delay in receiving their attorney fees arising from the contingent fee arrangement. Therefore, the Court awards the adjusted lodestar amount without a multiplier, which it finds to be a reasonable amount in light of all the circumstances.

### D. Costs

Plaintiff requests $14,796.93 in costs. *See* Mikhov Decl., Ex. B (Bill of Costs). These costs fall into the following categories: 1) Court filing fee ($435); 2) fees for service of summons and subpoena ($75.90); 3) jury fees ($150); 4) deposition costs ($3,898.19); 5) expert witnesses ($8,774.17); 6) attorney services and messenger court filings and service ($454.46); 7) overnight courier service ($47.34); 8) appearance attorneys ($65); 9) travel ($896.87).

FCA does not challenge the adequacy of the documentation supplied in support of Plaintiff's costs but argues as to many of them that they should not be awarded because they are not allowable under Rule 54 of the Federal Rules of Civil Procedure, Civil Local Rule 54-3 or 28 U.S.C. § 1920. *See* FCA US LLC's Objections to Plaintiffs' Bill of Costs ("Objections"), Docket No. 101 at 5. It also argues that fees for Dr. Luna and Mr. Lepper should be excluded, in their entirety, because the Court excluded both witnesses. Finally, FCA challenges the cost of travel to attend depositions sought by Plaintiff's counsel, who are based in Southern California, arguing that Plaintiff could have retained local counsel.

As a preliminary matter, the Court addresses FCA's argument that Plaintiff's costs are limited to those that are available under federal law, that is, under Rule 54 and 28 U.S.C. § 1920, despite California law holding that by including "expenses" in the Song-Beverly Act's cost provision, the Legislature intended that the provision would *not* be limited to the costs that are available under the general rules governing the costs awards. *See Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 137 (1995), as modified on denial of reh'g (June 22, 1995). FCA relies on a handful of cases in which courts in the Eastern District of California have concluded that under the *Erie* doctrine, the award of costs under the Song-Beverly Act is governed by federal law and therefore, only costs that are allowable under 28 U.S.C. § 1920 are available in federal court. *See*

10

*Robinson v. Kia Motors Am., Inc.*, No. 10-cv-3187, 2016 WL 4474505 at *1 (E.D. Cal. Aug. 25, 2016); *Hall v. FCA US LLC*, No. 16-cv-0684, 2018 WL 2298431 at *8 (E.D. Cal. May 21, 2018); *Self v. FCA US LLC*, No. 17-cv-01107, 2019 WL 1994459 at *12 (E.D. Cal. May 6, 2019). At least one court that reached this conclusion acknowledged that there is an exception to the general rule "where 'a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme.'" *Self v. FCA US LLC*, 2019 WL 1994459, at *12 (quoting *Kelly v. Echols*, No. CIV-05118-AWI-SMS, 2005 WL 2105309, at *16 n. 8 (E.D. Cal. Aug. 30, 2005) (citing *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–65 (9th Cir. 2003)). It concluded, however, that the exception did not apply because "the Song-Beverly Act does not make costs an element of damages as in *Clausen*." *Id*.

On the other hand, a court in the Central District of California recently reached the opposite conclusion, finding that the *Clausen* exception does apply to Song-Beverly Act claims and therefore, that state law applies to cost awards under the Song-Beverly Act even in federal court. *See Forouzan v. BMW of N. Am., LLC*, No. CV173875DMGGJSX, 2019 WL 3422607, at *2 (C.D. Cal. July 26, 2019). In *Forouzan*, the court first looked to the Ninth Circuit's decision in *Clausen*, in which the court addressed whether the cost provision in Oregon's Oil Spill Act calling for the award of "costs of any kind" was governed by federal or state law. *Id*. at *2 (citing *Clausen*, 339 F.3d at 1064-1066). The court in *Clausen* concluded that state law applied to the determination of costs available to a prevailing party under that Oil Spill Act, reasoning "that the Oregon Legislature's decision to craft a statute that included costs and expenses as a part of a prevailing plaintiff's damages was an 'express indication' of the Legislature's 'special interest in providing litigants' with full compensation for reasonable sums expended in pursuit of an Oil Spill Act claim." *Id*. (citing *Clausen*, 339 F.3d at 1065 (internal quotation and citation omitted)). Citing to the California Supreme Court's discussion in *Jensen* of the California Legislature's intent in enacting the Song-Beverly Act, the *Forouzan* court concluded that "[t]he California Legislature has demonstrated a similar 'special interest' [to the one in *Clausen*] in permitting prevailing Song-Beverly plaintiffs to recover costs and expenses under section 1794." Therefore, the court applied state law to the prevailing plaintiff's request for costs under the Song-Beverly

11

Act.

The undersigned finds the reasoning of *Forouzan* to be persuasive and likewise finds that under the *Clausen* exception, state law governs Plaintiff's request for costs. Therefore, the Court rejects FCA's challenges to the extent they are based on its position that Plaintiff is limited to the costs available under 28 U.S.C. § 1920.

The Court also rejects FCA's specific challenges to Plaintiff's costs, which the Court finds to be reasonable. In particular, the Court finds that Plaintiff's request for the cost of reserving a jury is reasonable and recoverable. The Court also declines to exclude the costs associated with Plaintiff's expert witnesses. In contrast to the *O'Brien* case, where the exclusion of Mr. Lepper as an expert was the result of counsel's failure to produce an expert report by Mr. Lepper, in this case an expert report was produced. While the Court ultimately concluded the opinions of Mr. Lepper did not satisfy *Daubert* and Rule 702, Plaintiff had a colorable basis for offering Mr. Lepper's opinions. Finally, the Court does not find that a reduction of costs with respect to travel expenses is warranted. The travel expenses Plaintiff seeks are relatively low and FCA has not presented any evidence establishing that Plaintiff could have retained local lemon law attorneys with comparable experience.

Accordingly, the Court awards in full the costs requested by Plaintiff.

## IV. CONCLUSION

For the reasons stated above, the Court awards $67,582.50 in attorneys' fees and $14,796.93 in costs.

**IT IS SO ORDERED.**

Dated: September 25, 2019

JOSEPH C. SPERO
Chief Magistrate Judge